UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

SHAWN DAVIS,

                Petitioner,                    Case Number 1:08-CV-10244
                                                  Honorable Thomas L. Ludington

v.

CARMEN PALMER,

                Respondent,

_____/

**OPINION AND ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS,
DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND DENYING
PERMISSION TO PROCEED IN FORMA PAUPERIS ON APPEAL**

      Petitioner Shawn Davis, confined at the Michigan Reformatory in Ionia, Michigan, has filed

a pro se application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1]  Petitioner was

convicted following a jury trial in the Wayne Circuit Court of second-degree murder, Mich. Comp.

Laws § 750.317, assault with intent to do great bodily harm, Mich. Comp. Laws § 750.84, and

commission of a felony with a firearm, Mich. Comp. Laws § 750.227b.  Petitioner was sentenced

to concurrent prison terms of 30-to-60 years for the murder conviction and 80-to-120 months for the

assault conviction, to be served consecutively with a two-year term for the firearm conviction.

Petitioner alleges that (1) he was denied the effective assistance of trial counsel, (2) that his

statement to police was involuntary, (3) that the sentencing guidelines were scored improperly, and

_____

      [1] When Petitioner originally filed his petition for a writ of habeas corpus, he was
incarcerated at the Macomb Correctional Facility, but he has since been transferred to the
Michigan Reformatory.  The proper respondent in a habeas case is the habeas petitioner's
custodian, which in the case of an incarcerated habeas petitioner is the warden of the facility
where the petitioner is incarcerated. *See Edwards Johns*, 450 F. Supp. 2d 755, 757 (E.D. Mich.
2006); *See also* Rule 2(a), 28 U.S.C. § 2254.  Therefore, the Court substitutes Warden Carmen
Palmer in the caption.

(4) that he was denied that effective assistance of appellate counsel. Respondent filed an answer to the petition arguing that the claims are without merit, procedurally defaulted, and not cognizable. For the reasons stated in this Opinion and Order, the petition will be denied.

I.

The relevant facts were explained by the Michigan Court of Appeals, and are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009).

> This case arose when a black car in which defendant was riding with three friends drove up next to a burgundy Chevy Monte Carlo. One of the friends riding with defendant mistook the Monte Carlo for one recently stolen from him, so he started questioning the Monte Carlo's driver about where he bought the car. Defendant's friend asked if he could look at the car, and the Monte Carlo's driver agreed. All at once, defendant and his three friends, carrying various firearms, jumped from the black car and pointed their weapons at the Monte Carlo's driver and passenger. Defendant was carrying an assault rifle and pointing it at the Monte Carlo over the hood of the black car.
>
> One of defendant's friends aimed into the Monte Carlo and shot each occupant once in the legs. Defendant then moved to the front of the Monte Carlo and pointed his weapon at the occupants through the windshield. The passenger managed to crawl out of the Monte Carlo and squeeze his head and neck under it for protection. The group of gunmen opened fire on the driver, hitting him nineteen times and killing him. After shooting at the driver, the gunman who originally shot the passenger in the leg walked to the other side of the car, stood over him, and shot him four more times in the lower body as he lay, unarmed, with his head and shoulders under the car. The group then fled the scene in the black car. Almost immediately, a police officer spotted the black car running a stop sign and chased it in his unmarked police car. When the black car stopped, police observed defendant, who was occupying the front passenger's seat, throw an assault rifle and shed his dark clothes as he ran away. Police recovered an assault rifle by some black pants in a field near defendant's escape route. Police matched bullets fired and spent casings ejected from the assault rifle to bullets and spent casings found at the scene. While the shooting severely and permanently injured the passenger, he survived and testified at trial.

*People v. Davis*, No. 241710 (Mich. Ct. App. Sept. 23, 2004).

Following his conviction, Petitioner filed a claim of appeal with the Michigan Court of Appeals. His appointed appellate counsel filed a brief challenging the sufficiency of the evidence and the computation of the sentencing guidelines. Petitioner subsequently retained appellate counsel who filed a motion to remand for an evidentiary hearing in support of two ineffective assistance of counsel claims:

> I. Petitioner's lawyer unilaterally repudiated, without Petitioner's knowledge, consent or approval, Petitioner's agreement with the police to testify against the shooters.
>
> II. Failure to present Petitioner's mere presence defense; advisement to Petitioner not to testify; failure to interview and call available character witnesses.

The Court of Appeals issued an order granting Petitioner's motion to remand for an evidentiary hearing. In November 2003, the trial court held the required hearing and heard testimony from Petitioner, his trial counsel, and other witnesses. On April 12, 2004, the trial court issued its decision from the bench, finding that Petitioner had not been denied the effective assistance of counsel. After Petitioner and the prosecutor filed supplemental briefs, the Michigan Court of Appeals issued an unpublished opinion affirming Petitioner's convictions and sentences. *Davis*, *supra.*

Petitioner filed an application for leave to appeal with the Michigan Supreme Court that raised two issues:

> I. Petitioner's lawyer unilaterally repudiated, without Petitioner's knowledge or consent, the agreement he negotiated between Petitioner, the police and Prosecutor. The agreement obligated Petitioner to testify against three principals in the homicide-assault. In return, Petitioner was not charged. As the direct result of counsel's breach, Petitioner was arrested, tried and wrongfully/erroneously convicted. Petitioner's Fifth and Sixth Amendment due process and effective counsel rights were violated. Reversal is the only appropriate remedy.
>
> II. The sentencing court exceeded the guidelines for reasons that were substantial and

compelling, and were already taken into account in the guidelines. Moreover, Petitioner's Sixth Amendment rights were violated under the United States Supreme Court's principles announced in *Blakely v. Washington*. Davis is entitled to re-sentencing.

The Michigan Supreme Court issued an order denying Petitioner's application for leave to appeal because it was not persuaded that the questions presented should be reviewed. *People v. Davis*, No. 127446 (Mich. Sup. Ct. July 14, 2005).

Petitioner subsequently filed a pro se motion for relief from judgment with the Wayne Circuit Court under MCR 6.508(D) that raised three issues:

I. The failure of former appellate counsel to raise the herein issues denied Petitioner his Sixth Amendment right to effective counsel and was "cause" for failure to raise these issues in a prior appeal and resulted in prejudice to Petitioner.

II. The use of Petitioner's statement compelled by the unauthorized agreement made by a police officer violated his Fifth and Fourteenth Amendment rights.

III. The findings of fact of the *Ginther* hearing court was clearly erroneous, violating Petitioner's due process rights.

On August 29, 2006, the Wayne County Circuit Court issued an order denying Petitioner's motion for relief from judgment.

Petitioner filed a delayed application for leave to appeal the denial of his motion for relief from judgment in the Michigan Court of Appeals, but it was denied "for failure to meet the burden of establishing entitlement to relief under Mich. Ct. Rule 6.508(D)." *People v. Davis*, No. 277009 (Mich. Ct. App. July 26, 2007). Petitioner's subsequent application for leave to appeal filed in the Michigan Supreme Court was denied on the same grounds. *People v. Davis*, No. 134713 (Mich. Sup. Ct. Nov. 29, 2007).

Petitioner's amended habeas petition raises four claims:

I.  Petitioner was denied the right to effective assistance of counsel during the

-4-

proceedings in the state court when (A) without Petitioner's knowledge or consent trial defense counsel repudiated Petitioner's agreement with police to testify against his co-defendants; (B) counsel failed to interview known available character witnesses; (C) counsel erroneously advised Petitioner not to testify in his own defense; and (D) counsel failed to present the U.S. Const., Ams VI and XIV.

II.    The use of Petitioner's statement at trial violated his right against self-incrimination, where Petitioner was compelled to make a statement to police officer's [sic] regarding his knowledge of the crime based on an agreement with police that he would not be charged, and after Petitioner's attorney repudiated the agreement his statement was used against him at trial.  U.S. Const. Ams V and XIV.

III.    As applied the state trial court's use of the identified sentencing offense variables culminating in sentences that exceeded the statutory maximum and violated Petitioner's right to a jury trial.  U.S. Const., Ams VI and XIV.

IV.    The court should hear the merits of the Fifth Amendment claim because Petitioner had ineffective assistance of appellate counsel on appeal; alternatively the factual and legal predicate did not exist until after remand and, if so, appellate counsel could not be expected to raise the claim of ineffective assistance of counsel against himself; it would result in a fundamental miscarriage of justice not to hear the claim; and Petitioner is actually innocent.

## II.

Federal law provides for the issuance of a writ of habeas corpus for a prisoner in custody pursuant to the judgment of a state court if the prisoner's continued detention violates the Constitution or laws of the United States.  28 U.S.C. § 2254(a).  If a claim was previously adjudicated in a state court, it should not be granted unless the state court's consideration of the issue:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *Harpster v. State of Ohio*, 128 F. 3d 322, 326 (6th Cir. 1997).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  An "unreasonable application" occurs when the state court identifies the correct legal principle from a Supreme Court decision but unreasonably applies that principle to the facts of the prisoner's case.  *Williams v. Taylor*, 529 U.S. 362, 412-413 (2000).  A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly."  *Id*. at 411.

III.

A.

Petitioner first claims that he was denied the effective assistance of counsel at trial.  His central allegation is that his trial attorney brokered a deal whereby, in exchange for giving a statement to the police and testifying against his co-defendants, Petitioner would be treated as a witness and not as a defendant.  Petitioner asserts that his counsel then rejected the agreement by informing the prosecution that he would not testify at the other trials without consulting him.   As a result of not cooperating with the authorities, Petitioner claims that he was subjected to vindictive prosecution.  Petitioner also claims that his trial counsel deficiently advised him not to testify in his own defense, failed to call character witnesses, and failed to effectively argue a "mere presence" defense.  Respondent claims that the state court decision rejecting these claims was not objectively unreasonable.

The Sixth Amendment right to counsel and the right to effective assistance of counsel protect

-6-

the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the ineffective assistance of counsel, Petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id*. at 687. These two components are mixed questions of law and fact. *Id*. at 698. Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id*. at 697. If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.*

With respect to the performance prong of the *Strickland* test, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id.* at 689; *see also O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id*. at 695.

Petitioner's primary allegation of ineffective assistance of counsel claims that his attorney unilaterally reneged on a deal to testify against the other three men implicated in the shooting in exchange for Petitioner not being charged. The Michigan Court of Appeals rejected the claim on

the grounds that no such deal existed:

> Although defendant asserts that defense counsel, without his consent, repudiated an agreement for defendant to testify in exchange for not being charged, the testimony at the *Ginther* hearing established that there was never any formal agreement for defendant to testify in exchange for immunity from prosecution. Rather, at best, there were informal discussions between police and both defendant and defense counsel that defendant could possibly avoid being charged if he agreed to cooperate and testify against his codefendants. Before defendant gave a statement to police, defense counsel advised defendant that the police did not have authority to make any promises about his prosecution, but defendant made his statement to police anyway. Defense counsel subsequently contacted the prosecutor to discuss defendant's status, but the prosecutor had not yet decided whether defendant would be charged. Because the prosecutor was not willing to commit to a binding immunity agreement, defense counsel advised defendant not to make further statements or testify at the codefendants' preliminary examination, because, without immunity, any further statements or testimony could be used against him. This advice was sound and does not reflect ineffective assistance. Counsel properly advised defendant that the police did not have the authority to make decisions whether defendant would be charged. *See People v. Gallego*, 430 Mich. 443, 452 (1988). Without immunity, defendant could have been charged and, had he testified, his testimony could have been used against him later.

*Davis*, *supra* at 3.

First, Petitioner's allegation suffers from a fundamental flaw in addition to the rationale offered by the state court. Petitioner claims that his retained counsel performed deficiently prior to the initiation of formal proceedings. Petitioner did not, however, have a constitutional right to counsel before charges were filed against him, and therefore he had no right to the effective assistance of counsel under the Sixth Amendment. *See Coleman v. Thompson*, 501 U.S. 722, 752 (1991); *Wainwright v. Torna*, 455 U.S. 586, 587-88. The Supreme Court has held that the "right to counsel attaches only at or after the initiation of adversary judicial proceedings against the defendant." *United States v. Gouveia*, 467 U.S. 180, 187 (1984). Adversarial judicial proceedings may begin "by way of formal charge, preliminary hearing, indictment, information, or arraignment." *Kirby v. Illinois*, 406 U.S. 682, 689 (1972). Petitioner claims that his attorney's deficient

-8-

performance in deciding to have Petitioner not testify at the preliminary examination of the other defendants *resulted* in the prosecutor charging him instead of using him as a witness. Even if this allegation were true, the alleged deficient performance necessarily occurred before adversarial judicial proceedings had begun against Petitioner. Because Petitioner's Sixth Amendment right to counsel had not yet attached, he had no constitutional right to the effective assistance of counsel during his pre-indictment discussions with the Government. *See Coleman*, 501 U.S. at 752.

Even setting aside this fatal defect, the evidence presented at the state court evidentiary hearing undermines the factual basis for Petitioner's allegation. At the hearing, Detroit Police Officer Miguel Bruce testified that he and his partner learned about Petitioner's possible involvement in the shooting and brought him in for questioning. Petitioner informed Bruce that he had an attorney. When the attorney, Kerry Jackson arrived, he spoke with Petitioner in private. Petitioner then gave a statement in which he implicated three other men and claimed that he stayed in the car during the shooting. At that point in time Officer Bruce intended to use Petitioner as a witness against the three other men.

Bruce testified, however, "that was not my decision to make, but . . . that's what our objective was as a squad. . . ." T 11/14/03, at 122. Bruce or members of his squad subsequently spoke with the prosecutor's office "and that determination was made by the prosecutor's office that yes he would be removed from the warrant and used as a witness." *Id.* at 124, 150. Bruce also testified that he informed Petitioner and his attorney at the interview that he did not have authority to make any deal, and that it was something that would be determined by the prosecutor. *Id.* at 137–38, 141–42. Petitioner and his counsel were also told that the police would send a warrant with Petitioner's name on it to the prosecutor, and that fell within the prosecutor's discretion whether to

-9-

use it.  *Id.* at 142.  Bruce denied that he ever made a representation to Petitioner or his counsel that Petitioner would not be charged with a crime if he made a statement.  *Id.* at 143–44.

When the time came for Petitioner to testify at the preliminary examination of one of the other three men, Bruce had a conversation with Petitioner's attorney and was informed that Petitioner was no longer willing to testify without a promise of immunity.  *Id.* at 126.  At that point, Bruce testified, the police's decision to use Petitioner as a witness changed.  *Id.* at 153.  Petitioner's refusal to testify was not the only factor in his change of status, however.  Bruce also testified that "we had a witness come forward after that . . . stated that he saw all four of them get out of the car and induce (sic) shooting.  So at that point of time that kind of changed."  *Id.* at 153.

Petitioner's trial counsel, Kerry Jackson, testified that when he met with Petitioner privately at the police station, Petitioner told him about being in the vehicle with the three perpetrators of the shooting, but he did not mention that he had a gun.  T 11/17/03 at 105, 108, 147, 165; T 11/26/03 at 35.  When Petitioner then made a statement to the police, he told them that he had a gun in the car.  Jackson knew that this created the possibility that Petitioner would be charged: "I told him it's entirely possible now that you've made that statement you've admitted carrying a gun in the car they could charge you."  T 11/26/03 at 32-33.  Further investigation revealed that four ski masks were found in the car, including one found by Petitioner's seat.  Id., at 37.  Realizing the potential that his client might be charged after he testified, Jackson advised Petitioner that he should not testify unless he could reach an immunity agreement with the prosecution.  T 11/17/03 at 121; T 11/26/03 at 33.  Jackson testified that he "tried [his] best to convince [the prosecutor] of the same offer, that my client would be a much better witness than a defendant.  [The prosecutor] did not agree with me."  T 11/17/03 at 124-25.  When the prosecutor failed to offer Petitioner immunity, Jackson advised

Petitioner that testifying would not be a wise idea.  T 11/26/03, at 33.  Petitioner went along with this advice.  *Id.* at 33-34.

Accordingly, Petitioner's counsel did not unilaterally repudiate any agreement he had with the Government: there was no agreement.  Instead, the record demonstrates that Petitioner's counsel was attempting to broker a deal with the prosecution, and during the initial stages of the investigation he had the support of the police.  These efforts were nearly successful because at some point the prosecutor removed Petitioner's name from the warrant and placed it on the witness list.  But ultimately, the prosecutor was unwilling to grant Petitioner immunity.

Petitioner's counsel then faced a strategic crossroad: he could advise Petitioner to testify against the other defendants without immunity and hope that Petitioner would not be later charged, or he could advise his client not to testify—and thereby avoid any further incriminating statements—but risk antagonizing the prosecution.  Both options carried risks and called for the sort of professional judgment that should not be second-guessed under the *Strickland* standard.  This Court cannot say that counsel's advice was deficient, and therefore that decision of the Michigan Court of Appeals rejecting this claim was not objectively unreasonable in light of the testimony presented at the state court hearing.

Petitioner next asserts that his trial counsel was ineffective when he failed to call character witnesses on Petitioner's behalf.  The Michigan Court of Appeals rejected this claim on the merits as well:

> Regarding the presentation of witnesses, "decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy, and this Court will not substitute its judgment for that of counsel regarding matters of trial strategy." *People v. Davis* (On Rehearing), 250 Mich. App. 357, 368 (2002). A trial counsel's decision to call character witnesses is a matter of trial strategy because injecting character into a trial generally opens the door to the

prosecution's rebuttal of that evidence.  Mich. R. Evid. 404(a)(1).

*Davis*, *supra*, at 4.

The record established at the state court evidentiary hearing supports this determination. Petitioner testified that defense counsel suggested that they call character witnesses at trial, and he and his wife gave defense counsel three names.  T 11/14/03 at 28-29.  Defense counsel testified at the hearing that Petitioner only gave him the name of one person, his supervisor at his place of employment.  T 11/17/03 at 133.  He talked with Petitioner about the merits of calling the witness, and they decided not call him.  *Id.* at 134.  The decision whether to present character witnesses is the type of strategic choice that falls within the range of reasonableness set forth in *Strickland*.  *See United States v. Medved*, 905 F.2d 935, 942 (6th Cir. 1990) (holding that whether to call a particular witness is one of a lawyer's strategic decisions, and that counsel's decision not to do so did not amount to ineffective assistance). The decision of the Michigan Court of Appeals rejecting this allegation was not objectively unreasonable.

Petitioner next asserts that his counsel performed deficiently when he prevented him from testifying in his own defense. The Michigan Court of Appeals rejected this claim on the merits:

> Likewise, whether a defendant should testify and open himself to cross-examination is a question of strategy.  If defendant had testified in this case, he would have been forced to explain several facts that were inconsistent with a claim of innocence and mere presence, such as the glove carrying his DNA and four homemade ski masks found inside the black car.

*Davis*, *supra*, at 4.

At the evidentiary hearing defense counsel testified that he talked with Petitioner about whether to testify in his own defense, and counsel advised him not to testify.  T 11/17/03 at 134. Defense counsel testified that if Petitioner had wanted to testify despite the advice, he would have

-12-

allowed him to take the stand.  *Id.*  Petitioner acknowledged that he talked with his counsel about whether to testify at trial.  T 11/14/03 at 28.

When a tactical decision is made by an attorney that a defendant should not testify, the defendant's assent is presumed.  *Gonzales v. Elo*, 233 F. 3d 348, 357 (6th Cir. 2000).  A trial court has no duty to inquire sua sponte whether a defendant knowingly, voluntarily, or intelligently waives his right to testify.  *United States v. Webber*, 208 F. 3d 545, 551-52 (6th Cir. 2000).  Waiver of the right to testify may be inferred from a defendant's conduct.  Here, Petitioner did not alert the trial court at the time of trial that he wanted to testify.  Thus, his omission to do so constitutes a waiver of this right.  *Id.*  Because the record is void of any indication by Petitioner that he disagreed with counsel's advice that he should not testify, Petitioner has not overcome the presumption that he willingly agreed to counsel's advice not to testify or that his counsel rendered ineffective assistance of counsel.  *Gonzales*, 233 F. 3d at 357.

Petitioner's final allegation of ineffective assistance of counsel claims that his attorney should have presented a "mere presence" defense.  The Michigan Court of Appeals likewise rejected this claim on the merits: "Finally, the record discloses that defense counsel presented a mere-presence defense to the extent possible given the facts, so defendant's last claim of ineffective assistance also lacks merit."  *Davis*, *supra* at 4.  In fact, defense counsel's trial strategy centered on the idea that no credible witnesses placed Petitioner outside the car and participating in the shooting. His counsel argued that Petitioner was charged only because his client refused to testify for the prosecution against the other three men.  The defense suffered from the inconvenient fact that Petitioner admitted that he had a gun, that four ski-masks were found in the perpetrators' car, and that a glove was found containing Petitioner's DNA.  Based on this evidence, the prosecutor argued

that even if Petitioner was not one of the shooters, he should be convicted under and aiding-and-abetting theory.  Petitioner does not specify how some other version of a "mere presence" defense would have overcome these difficulties or proven to be more successful.  The decision of the Michigan Court of Appeals with respect to this claim was not objectively unreasonable.

### B.

Petitioner next asserts that his statement to police was involuntarily made because he made it under the false belief that he had an agreement in place that he would not be prosecuted.  This claim was not presented to the state courts during Petitioner's direct appeal. It was first presented in Petitioner's motion for relief from judgment.  Respondent asserts, therefore, that the claim is procedurally defaulted under Mich. Ct. R. 6.508(D)(3).

Federal habeas relief is precluded on claims that a petitioner has not presented to the state courts in accordance with the state's procedural rules.  *See Wainwright v. Sykes*, 433 U.S. 72, 85-87 (1977).  The doctrine of procedural default is applicable when a petitioner fails to comply with a state procedural rule, the rule is actually relied upon by the state courts, and the procedural rule is "adequate and independent."  *White v. Mitchell*, 431 F.3d 517, 524 (6th Cir. 2006); *see also Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005); *Coleman v. Mitchell*, 244 F.3d 533, 539 (6th Cir. 2001).  The last explained state court judgment should be used to make this determination.  *Ylst v. Nunnemaker*, 501 U.S. 797, 803-05 (1991).   If the last state judgment is a silent or unexplained denial, it is presumed that the last reviewing court relied upon the last reasoned opinion. *Id.*

The Sixth Circuit recently determined that the form orders used by the Michigan appellate courts are ambiguous in identifying whether they refer to a procedural default or the denial of right on the merits. *Guilmette v. Howes*, 624 F.3d 286 (6th Cir. 2010) (en banc). Under *Guilmette*, the

Court must "look through" the unexplained orders of the Michigan appellate courts to the decision of the state trial court to determine the basis for the denial of state post-conviction relief.

The state trial court denied relief on procedural grounds. It denied relief with respect to these claims under Mich. Ct. R. 6.508(d)(3) by finding that Petitioner had not demonstrated good cause or actual prejudice with respect to the claims that were not presented to the state court during his direct appeal:

> In order to advance an allegation in a subsequent motion that could have been raised on appeal, the defendant must demonstrate "good cause" for failure to raise the grounds on appeal or actual prejudice resulting from the alleged irregularities that support the claim for relief, pursuant to Mich. Ct. R. 6.508(D)(3)(a)(b).
>
> *          *          *
>
> The record clearly reflects that the constitutional rights afforded defendant under the United States Constitution have been protected. Defendant was afforded a fair trial and full appeal. Therefore, pursuant to Mich. Ct. R. 6.508(D)(3)(b), defendant has failed to establish good cause and actual prejudice that supports his claim.

Opinion, at 2.

Accordingly, Petitioner's second claim is procedurally defaulted. A state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. *Nields v. Bradshaw*, 482 F.3d 442 (6th Cir. 2007); *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996).

Petitioner's fourth habeas claims asserts ineffective assistance of appellate counsel as cause to excuse his default. In order to establish ineffective assistance of counsel, Petitioner must show "that counsel's performance was deficient . . . [and] that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *O'Hara v. Wigginton*, 24 F.3d 823,

-15-

828 (6th Cir. 1994). In determining whether counsel's performance was deficient,

> [t]he court must … determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance . . . . At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

*Strickland*, 466 U.S. at 690. Therefore, judicial scrutiny of counsel's performance must be "highly deferential." *Id.* at 689. The defense is prejudiced only if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

It is well established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983). The Supreme Court has explained:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the . . . goal of vigorous and effective advocacy. . . . Nothing in the Constitution or our interpretation of that document requires such a standard.

*Id.* at 754.

Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). In fact, "the hallmark of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." *See Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Barnes*, 463 U.S. at 751-52). "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002). Appellate counsel may deliver deficient performance and prejudice a defendant by omitting a "dead-bang

winner," defined as an issue which was obvious from the trial record and would have resulted in reversal on appeal. *See Meade v. Lavigne*, 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003).

Petitioner has not shown why his appellate counsel's omission of the claim that his statement to police was involuntary, fell outside the wide range of professionally competent assistance. The omitted claim is not clearly stronger than the claims raised by appellate counsel. In particular, the claim that Petitioner was denied the effective assistance of counsel was considered by the state courts to be substantial enough to require a lengthy evidentiary hearing. Appellate counsel forcefully pressed this claim in the trial court, the court of appeals, and in the Michigan Supreme Court. Petitioner's involuntary statement claim is simply another legal theory Petitioner attaches to the factual allegation that he reached an immunity agreement. Appellate counsel's decision to raise the allegation in the context of ineffective assistance of counsel was not deficient. Petitioner has thus failed to demonstrate that appellate counsel was ineffective so as to establish cause to excuse his procedural default.

Petitioner also asserts that his claim is not subject to procedural default because he is actually innocent. A procedural default may be excused when a petitioner establishes that failing to review the claim would result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Combs v. Coyle*, 205 F.3d 269, 274 (6th Cir. 2000). To demonstrate that a "fundamental miscarriage of justice" would occur absent review of a petitioner's claim, the petitioner must assert a credible claim of actual innocence that is supported by reliable evidence that was not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 315-16 (1995). Here, Petitioner does not point to any reliable evidence that was not presented at trial to support his claim that he is actually innocent. Therefore, review of this claim is barred by procedural default, and it does not warrant habeas relief.

-17-

C.

Petitioner's remaining claim asserts that the sentencing guidelines were improperly scored and that the trial court improperly based Petitioner's sentence on facts that were not submitted to a jury and proven beyond a reasonable doubt or conceded by Petitioner at the plea hearing.

A habeas petitioner's claim that the trial court violated state law when sentencing him is not cognizable in habeas corpus proceedings. *See Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988); *Haynes v. Butler*, 825 F.2d 921, 924 (5th Cir. 1987). Federal habeas courts have no authority to interfere with perceived errors in state law unless the petitioner is denied fundamental fairness in the trial process. *See Estelle v. McGuire*, 502 U.S. 62, 67-68,(1991); *Serra v. Michigan Department of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993). Petitioner's claim that the court improperly scored or departed from the guidelines range raises issues of state law that are not cognizable on habeas review. *See Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999) (claim that sentencing court departed from Michigan sentencing guidelines presents an issue of state law only and is, thus, not cognizable in federal habeas review); *Welch v. Burke*, 49 F. Supp. 2d 992, 1009 (E.D. Mich. 1999) (same); *see also*, *Branan*, 861 F.2d at 1508 (claim that court misapplied state sentencing guidelines not cognizable on habeas review).

Petitioner also asserts that he is entitled to habeas relief because the trial court judge violated his Sixth Amendment right to a trial by jury by using factors to score the guidelines which had not been proven to a jury beyond a reasonable doubt or admitted to by Petitioner. Petitioner believes that *Blakely v. Washington*, 542 U.S. 296 (2004), and *Apprendi v. New Jersey*, 530 U.S. 466 (2000), support his position. However, his claim that Michigan's sentencing guideline system, where judge-found facts are used to establish the minimum sentence of an indeterminate sentence, violates

-18-

the Sixth Amendment has been foreclosed by the Sixth Circuit's decision in *Chontos v. Berghuis*,
585 F.3d 1000, 1002 (6th Cir. 2009) ("[The petitioner] argues that the Michigan trial judge violated
*Apprendi* by finding facts that raised his minimum sentence. But *Harris v. United States* explains
that *Apprendi*'s rule does not apply to judicial factfinding that increases a minimum sentence so long
as the sentence does not exceed the applicable statutory maximum."); *see also Montes v. Trombley*,
599 F.3d 490, 495 (6th Cir. 2010) (holding that the *Blakely-Apprendi* rule does not apply to laws that
set the maximum sentence by statute but that permit a judge to determine the minimum sentence
through judicial factfinding, and does not preclude a judge from utilizing the
preponderance-of-the-evidence standard when finding facts related to sentencing). Because
Petitioner's sentence fell within the statutorily-authorized maximum penalty of life imprisonment,
which was not enhanced by judicial factfinding, no Sixth Amendment violation occurred. Petitioner
has not stated a claim upon which federal habeas relief may be granted on this issue.

## IV.

Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability
must issue. 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may
issue "only if the applicant has made a substantial showing of the denial of a constitutional right."
28 U.S.C. § 2253(c)(2). When a court rejects a habeas claim on the merits, the substantial showing
threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's
assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473,
484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude
the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v.
Cockrell*, 537 U.S. 322, 327 (2003). In applying that standard, a district court need not conduct a

-19-

full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims. *Id*. at 336-37.

Likewise, when a district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claims, a certificate of appealability should issue if the petitioner shows that jurists of reason would find it debatable whether the petitioner states a valid claim to the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Slack*, 529 U.S. at 484. When a procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petition should be allowed to proceed further. In such a circumstance, no appeal would be warranted. *Id.* It is appropriate to grant or deny the certificate of appealability at this time. *See* Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

Petitioner has not made a substantial showing of the denial of a constitutional right. Accordingly, a certificate of appealability is not warranted in this case. Petitioner will not be permitted to proceed in forma pauperis on appeal, as any appeal would be frivolous. *See* Fed. R. App. P. 24(a).

V.

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas relief on the claims contained in his petition.

Accordingly, it is **ORDERED** that the petition for writ of habeas corpus [Dkt. # 1] is **DENIED**.

It is further **ORDERED** that a certificate of appealability is **DENIED**.

-20-

It is further **ORDERED** that permission to proceed in forma pauperis on appeal is **DENIED**.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: January 26, 2011

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on January 26, 2011.

s/Tracy A. Jacobs
TRACY A. JACOBS

-21-